# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| ROBIN RHODES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO. 5:18-CV-22 (MTT) |
| HANCOCK COUNTY, | ) ) ) |
| Defendant. | ) ) ) |

## ORDER

Defendant Hancock County[1] has moved to dismiss three of Plaintiff Robin Rhodes' claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] Doc. 21. For the following reasons, that motion (Doc. 26) is **GRANTED**.

## I. FACTUAL ALLEGATIONS[3]

Rhodes, an African American with lupus,[4] started working for the Hancock County Board of Elections in 2009 as a deputy registrar. Doc. 20 ¶ 16. Her tasks

---

[1] The Hancock County Board of Elections was dismissed by consent of the parties on December 5, 2018. Doc. 33. Hancock County incorporated by reference the relevant sections of the Hancock County Board of Elections and Registration's motion to partially dismiss, and Rhodes incorporated by reference the relevant sections of her response to the BOER's motion to dismiss in her response to Hancock County's motion to dismiss. Docs. 26 at 3, 5-6; 29 at 4-5. The Court will thus refer and cite to the BOER's brief and Rhodes' response to it throughout this Order.

[2] In the same motion, Hancock County also moved to dismiss all claims against it because it was not properly served with process and process was insufficient. Doc. 26 at 4. Hancock County filed its motion on August 21, 2018. *Id.* at 6. Rhodes had filed her amended complaint, which joined Hancock County as a party, on July 17, 2018, and Hancock County was properly served on September 6, 2018—less than ninety days after the amended complaint was filed. Docs. 20; 28. A plaintiff has ninety days from the date the complaint is filed to serve the defendant. Fed. R. Civ. P. 4(m). Accordingly, Hancock County's motion to dismiss for improper service (Doc. 26) is **DENIED**.

[3] At the motion to dismiss stage, all allegations by the plaintiff are accepted as true and viewed in the light most favorable to the plaintiff. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (citation omitted).

[4] There are no allegations that anyone at the BOER was aware that Rhodes had lupus. *See generally* Doc. 20.

included "day to day office details[;]" preparing voter identification cards; handling absentee ballots; ensuring compliance with federal, state, and local election laws and regulations; and maintaining and updating voter databases. *Id.* ¶ 17.

In 2011, the Hancock County Board of Elections and Registration ("BOER"), a new entity, was created by statute to replace the Hancock County Board of Elections.[5] *Id.* ¶ 16. Around that time, Nancy Stephens,[6] a Caucasian woman, entered Rhodes' office and informed her that Stephens was going to be on the Board of the new BOER and did not want Rhodes working there. *Id.* ¶¶ 18-19. However, BOER Election Supervisor Aretha Cooper-Hill,[7] who hired Rhodes, allowed Rhodes to remain in her job. *Id.* ¶ 20. Stephens "continued her harassment of" Rhodes by telling her that she did not want Rhodes working there and was always "very prejudic[ial] and disrespectful towards [Rhodes] and [Cooper-Hill] who were all African Americans." *Id.* ¶¶ 20-21. There are no allegations that Stephens used any language relating to Rhodes' race or disability during her harassment of Rhodes. *See generally* Doc. 20.

Rhodes alleges that there was "an occasion" when Stephens tried to prevent poll managers from picking up voting machines at Rhodes' office for an upcoming election by standing in front of the door and taking photographs. *Id.* ¶ 21. Rhodes told Stephens to stop and stood in the doorway to prevent Stephens from interfering. *Id.* Stephens pushed Rhodes out of the doorway in an attempt to stop the poll managers, and the sheriff was called. *Id.* Stephens left the premises after talking with the sheriff.

---

[5] According to the statute creating the BOER, Hancock County is the employer of all BOER employees. Ga. S. Bill 173 § 11, Reg. Sess. (2011).

[6] Stephens was terminated as a defendant in this case on July 12, 2018. Docs. 19; 19-1, 34.

[7] Cooper-Hill is the plaintiff in a pending case that arises out of many of the same factual allegations as this case. *See Cooper-Hill v. Hancock Cty. Bd. of Comm'rs*, 5:18-cv-23, Doc. 1.

*Id.* There are no allegations that Stephens used any language relating to Rhodes' race or disability during this "occasion."  *See generally* Doc. 20.

The other BOER Board members were "aware of [Stephens'] actions, because she public[ly] attacked Ms. Rhodes' character[.]"  *Id.* ¶ 20.  Rhodes also complained "to the [African-American] BOER [Board] members for several acts of racial discrimination and harassment that she had been subjected to since her employment[,]" and "the harassment and conflict became worse[.]"  *Id.* ¶ 18, 29.  It is not clear when Rhodes submitted her complaints, whether Stephens and the Caucasian members of the Board had knowledge of such complaints, or exactly when the "harassment and conflict became worse[.]"  *See generally* Doc. 20.

In April 2015, Rhodes received a job evaluation.  *Id.* ¶¶ 7, 23.  The three Caucasian members of the BOER Board gave Rhodes a one out of five on all questions, with one being the worst rating and five being the best.  *Id.* ¶ 23.  Rhodes was then terminated, despite her long, discipline-free tenure and BOER policies mandating that employees receive lesser sanctions before being terminated.  *Id.* ¶¶ 24, 28.  Rhodes alleges that "[t]hese evaluations were racially motivated and a means of accomplishing [Rhodes'] termination.  These ratings were also contrary to the other Board members who were African Americans.  Additionally, [Rhodes] was told that [Cooper-Hill] would evaluate her, and the Board did not take that evaluation into consideration when [Rhodes] was terminated."  *Id.* ¶ 23.

Rhodes claims that her termination was the result of discrimination based on her race, disability, and complaints to the African-American members of the BOER Board that Stephens discriminated against her.  *Id.* ¶¶ 25-26, 34.  She alleges that the BOER's Caucasian majority wanted to acquire control over election records "to purge and

remove from the voter registration list, African American Citizens of Hancock County." *Id.* ¶ 25. Because Rhodes was also African American and "would not purge her own race votes," the Caucasian Board members were motivated to terminate her in furtherance of the vote-purging efforts. *Id.* ¶¶ 26-27.

Rhodes alleges Hancock County, through the BOER, racially discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, and discriminated against her based on her disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. *et seq. Id.* ¶¶ 39-48. She also alleges Hancock County, through the BOER, retaliated against her for engaging in activity protected by Title VII and Title I of the Civil Rights Act of 1964. *Id.* ¶ 48. Finally, she claims she was subjected to a hostile work environment in violation of Title VII and Title I. *Id.* ¶ 50. Hancock County, as Rhodes' official employer, now moves to partially dismiss Rhodes' complaint, specifically her claims for discrimination on the basis of her disability, for retaliation, and for hostile work environment. Doc. 26.

## II. MOTION TO DISMISS STANDARD

The Federal Rules of Civil Procedure require a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted).

However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## III. DISCUSSION

### A. Rhodes' Disability Discrimination Claim

Rhodes alleges that Hancock County discriminated against her based on her lupus. Doc. 20 ¶ 40. The ADA prohibits employers from discriminating against employees based on their known disabilities. 42 U.S.C. § 12112(a). "To state a discrimination claim under the ADA, a plaintiff must allege sufficient facts to plausibly suggest (1) that he suffers from a disability, (2) that he is a qualified individual, and (3) that a 'covered entity' discriminated against him on account of his disability." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (internal quotation marks and citation omitted). Hancock County does not argue that Rhodes failed to allege sufficient facts that she has a disability or that she is a qualified individual. Doc. 21. Rather, Hancock County argues that Rhodes failed to allege sufficient facts that it fired her "because of" her disability. Doc. 21 at 17-19.

The Court agrees. Terminating an employee "because of" their disability is a form of disability discrimination. 42 U.S.C. § 12112(b)(1). An employer that "lacks actual knowledge of an employee's disability cannot fire the employee *because of* that disability." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1186 (11th Cir. 2005) (emphasis added). Rhodes did not allege that anyone at the BOER was aware that she had lupus, and she did not ever request an accommodation for her disability in order to perform her job. *See generally* Doc. 20. Therefore, Rhodes did not allege sufficient facts to satisfy the third element of a disability discrimination claim. Furthermore, Rhodes purports to dismiss her disability discrimination claim in her response. Doc. 24 at 14. Accordingly, Rhodes' disability discrimination claim is **DISMISSED without prejudice**.

**B. Rhodes' Retaliation Claim**

Rhodes claims that her termination was a result of her complaints regarding racial discrimination in elections to the African-American BOER Board members. Doc. 20 ¶ 47. Title VII prohibits retaliation against an employee because she "has opposed any practice made an unlawful employment practice by [Title VII.]" 42 U.S.C. § 2000e-3(a). To plead a Title VII retaliation claim, a plaintiff must allege sufficient facts to plausibly suggest that (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. *McWhorter v. Nucor Steel Birmingham Inc.*, 304 F. Supp. 3d 1185, 1193 (N.D. Ala. 2018) (citing *Scott v. Sarasota Doctors Hosp. Inc.*, 668 F. App'x 878, 883 (11th Cir. 2017) (citation omitted)). Hancock County argues (1) that Rhodes did not participate in a statutorily protected activity, and (2) that she failed to allege sufficient facts to plead a causal connection. Doc. 21 at 6-12.

Rhodes' complaint does not allege sufficient facts to properly plead the first element of a retaliation claim. Informally voicing complaints to superiors regarding conduct prohibited by Title VII is considered statutorily protected activity. *Zarza v. Tallahassee Hous. Auth.*, 686 F. App'x 747, 753 (11th Cir. 2017) (citation omitted). Rhodes states (1) that she "complained to the African American board members and made it public[ly] known in board meetings of the violations from BOER Chairlady Kathy Ransom and BOER member Nancy Stephens in [sic] contrary to the Elections Code for the State of Georgia[;]" and (2) that she "complained of racial discrimination to the African American Board members." Doc. 20 ¶¶ 25, 29.

Hancock County argues that Rhodes' first allegation that she participated in statutorily protected activity "does not in any way touch upon opposition to an unlawful employment practice. . . . Instead, [Rhodes] allegedly opposed unlawful election practices." Doc. 21 at 8. "[A]n unlawful *employment* practice is established when the complaining party demonstrates that race . . . was a motivating factor for any *employment* practice. . . ." 42 U.S.C. § 2000e-2(m) (emphasis added). Employment practices include "fail[ing] or refus[ing] to hire or to discharge any individual . . . because of such individual's race" and "limit[ing], segregat[ing], or classify[ing] his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities[.]" 42 U.S.C. § 2000e-2(a).

Paragraph 18 of Rhodes' amended complaint possibly alleges an unlawful employment practice:

> BOER members Kathy Ransom and Nancy Stephens who are Caucasians, discriminated against [Rhodes] in that they began to retaliate against [Rhodes] for complaining to BOER members for several acts of racial discrimination and harassment that she had been subjected to since her employment.

*Id.* ¶ 18. When read liberally and in the context of the surrounding paragraphs, the Court initially interpreted the "racial discrimination" and "harassment" complained of as the BOER's allegedly unlawful employment practices, not the alleged unlawful election practices. *Id.* ¶¶ 19, 21 ("Prior to the formation of the BOER, Nancy Stephen's [sic] came into the office, and informed [Rhodes] that she was going to be a BOER Board Member and that she did not want [Rhodes] to be employed and work for the BOER. . . . Stephens was always very prejudice[ial] and disrespectful towards [Rhodes] and [Cooper-Hill] who were all African Americans.") However, Rhodes admitted in her response to the BOER's motion to dismiss that her complaints to the African-American BOER Board members were in reference to the allegedly unlawful election practices, not employment practices. [8] Doc. 24 at 8-9. Alleged discriminatory actions toward non-employee third parties is not an employment practice made unlawful by Title VII. *Edwards v. Ambient Healthcare of Ga., Inc.*, 674 F. App'x 926, 930 (11th Cir. 2017) (citing *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1007 & n.16 (11th Cir. 1997) (noting that employees' retaliation claim based on opposition to unlawful discrimination against motel customers "could not proceed under the familiar Title VII retaliation statute" because the plaintiffs did not allege that they were discriminated against for "opposing an unlawful *employment* practice")). Because Rhodes' complaint does not allege an unlawful employment practice, she has not sufficiently pled the first element of retaliation, and her claim is thus **DISMISSED without prejudice**.

---

[8] The Court "may use [Rhodes'] brief to clarify allegations in her complaint whose meaning is unclear." *Pegram v. Herdrich*, 530 U.S. 211, 230 n.10 (2000) (citations omitted).

### C. Rhodes' Hostile Work Environment Claim

Rhodes claims that the BOER, particularly Stephens, created a hostile work environment. Doc. 20 ¶ 50. To bring a hostile work environment claim, the plaintiff must allege: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her membership in the protected class; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under either vicarious or direct liability. *Jones v. UPS Ground Freight,* 683 F.3d 1283, 1292 (11th Cir. 2012).

Hancock County only argues that Rhodes did not allege sufficient facts to plead the fourth element of her hostile work environment claim. Doc. 21 at 12-17. The BOER makes its argument with a thorough analysis of the four-factor *Miller v. Kenworth of Dothan, Inc.* test. *Id.* (citing 277 F.3d 1269, 1276 (11th Cir. 2002)). However, that lengthy analysis is unnecessary, as Rhodes has not alleged anything in her amended complaint to suggest that she was harassed due to her membership in a protected class, thereby failing to sufficiently plead the third element of a hostile work environment.[9] *See generally* Doc. 20. Accordingly, Rhodes' hostile work environment claim is **DISMISSED without prejudice**.

---

[9] In her response to the BOER's motion to dismiss, Rhodes attempts to "elaborate on" and "clarify" her allegations in her twice-amended complaint by adding new facts. Doc. 24 at 5. For example, without citing to her amended complaint, she states that Stephens filed a "warrant complaint to in order to get [Rhodes] arrested and/or fired" and that Stephens referred to Rhodes as "'you or your people', meaning African-Americans." *Id.* at 6, 9-10. This lack of citation is unsurprising, as the amended complaint does not contain those allegations. *See generally* Doc. 20. "Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly[,]" and the Court will not consider those factual allegations. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1222 (11th Cir. 1999) (citation omitted). When she actually cites to her complaint, Rhodes alleges that Stephens publicly attacked her "'character and racial genetic make-up at public board meetings.'" *Id.* at 13 (citing Doc. 20 ¶ 20). However, that allegation does not have support in the

## IV.  CONCLUSION

Hancock County's motion to partially dismiss Rhodes' complaint (Doc. 26) is **GRANTED**, and its motion to dismiss all of Rhodes' claims for improper service of process and insufficient process (Doc. 26) is **DENIED**.  Accordingly, Rhodes' disability discrimination, retaliation, and hostile work environment claims are **DISMISSED without prejudice**.  Rhodes' racial discrimination claim may proceed to discovery.

**SO ORDERED**, this 10th day of December, 2018.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

paragraph to which it cites or anywhere else in the complaint.  *See generally* Doc. 20.  The Court is somewhat troubled with Rhodes' counsel's possible attempt to mislead, and that new factual allegation will not be considered.